**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

United States of America,
*Plaintiff-Appellee,*

v.

Lucien Antonio Roberts, a/k/a Lou,
*Defendant-Appellant.*

No. 99-4919

United States of America,
*Plaintiff-Appellee,*

v.

Pedro Santos, Jr.,
*Defendant-Appellant.*

No. 99-4925

United States of America,
*Plaintiff-Appellee,*

v.

Darrell Antonio Gumbs, a/k/a
Kyle,
*Defendant-Appellant.*

No. 99-4926

United States of America,
*Plaintiff-Appellee,*

v.

Aaron Keith Covington, a/k/a
A-Man,
*Defendant-Appellant.*

No. 00-4306

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Rebecca B. Smith, District Judge.
(CR-99-21)

Argued: November 3, 2000

Decided: August 16, 2001

Before NIEMEYER and KING, Circuit Judges, and
Margaret B. SEYMOUR, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge King and Judge Seymour joined.

_____

**COUNSEL**

**ARGUED:** Charles E. Haden, Hampton, Virginia; Larry W. Shelton,
JONES, SHELTON & MALONE, P.C., Norfolk, Virginia; James Stephen Ellenson, Newport News, Virginia, for Appellants. Laura Marie
Everhart, Assistant United States Attorney, Norfolk, Virginia, for
Appellee. **ON BRIEF:** Douglas Fredericks, Norfolk, Virginia, for
Appellant Gumbs. Helen F. Fahey, United States Attorney, Norfolk,
Virginia, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

On appeal from their convictions for conspiracy to traffic in illegal
drugs and related offenses, the four appellants in this case assign
numerous errors, the most significant of which is that they were entitled, pursuant to *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), to
have the jury find the drug quantities on which their sentences were

based by proof beyond a reasonable doubt. For the reasons that follow, we find the appellants' various arguments unpersuasive and affirm.

I

In April 1999, a grand jury in the Eastern District of Virginia returned a 64-count indictment that charged the appellants, Aaron Covington, Lucien Roberts, Darrell Gumbs, and Pedro Santos, as well as others, with conspiracy to traffic in illegal drugs and with substantive drug trafficking offenses. The indictment included allegations of the specific quantities of cocaine and cocaine base involved in each count.

During trial, the district court dismissed seven counts and submitted the remaining counts to the jury. The jury convicted all defendants on each count submitted. Almost all of the ten days of trial were consumed by the presentation of government witnesses, who offered extensive and unrebutted accounts as to the amounts of cocaine and cocaine base that the defendants possessed, distributed, and imported into the United States. The defendants called two witnesses, the first of whom was a psychologist whose testimony was offered to discredit a prosecution witness by describing his history of drug use and memory loss, and the second of whom was a police officer who had testified for the government earlier in the trial. As requested by the government, the jury was instructed that, in determining the defendants' guilt or innocence, "it is not necessary for the government to prove the exact or precise amount of controlled substances alleged in the indictment." The jury convicted Roberts of conspiracy to traffic in cocaine and cocaine base, in violation of 21 U.S.C. § 846; conspiracy to import cocaine, in violation of 21 U.S.C. § 963; and ten counts of distributing or possessing with intent to distribute cocaine or cocaine base, in violation of 21 U.S.C. § 841. It convicted Santos of conspiracy to traffic in cocaine and cocaine base, in violation of 21 U.S.C. § 846; and three counts of distributing or possessing with intent to distribute cocaine base, in violation of 21 U.S.C. § 841. It convicted Gumbs of conspiracy to traffic in cocaine and cocaine base, in violation of 21 U.S.C. § 846; conspiracy to import cocaine, in violation of 21 U.S.C. § 963; and three counts of distributing or possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841.

Finally, it convicted Covington of conspiracy to traffic in cocaine and cocaine base, in violation of 21 U.S.C. § 846; 18 counts of distributing or possessing with intent to distribute cocaine or cocaine base, in violation of 21 U.S.C. § 841; and one count of money laundering, in violation of 18 U.S.C. § 1956.

After conducting sentencing hearings, during which the district court made findings regarding the quantities of cocaine and cocaine base attributable to each defendant, the court sentenced Roberts to 10 life sentences and two 360-month sentences, all to run concurrently; Covington to 11 life sentences, eight 360-month sentences, and one 240-month sentence, all to run concurrently; Gumbs to two 151-month sentences and three 120-month sentences, all to run concurrently; and Santos to four 360-month sentences, all to run concurrently.

From the entry of judgments, these four defendants timely appealed.

## II

For their most significant argument on appeal, the defendants contend that, under the Supreme Court's decision in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000), they were entitled to have drug quantities determined by the jury under the reasonable-doubt standard, instead of by the court at a sentencing hearing under the preponderance standard.

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 120 S. Ct. at 2362-63. The defendants contend that unless the jury finds actual drug quantities to justify greater sentencing maximums, the statutory maximum term of imprisonment for each count of conviction under 21 U.S.C. § 841 and 21 U.S.C. § 960 is 20 years. *See* 21 U.S.C. §§ 841(b)(1)(C), 960(b)(3). Thus, they argue that in the absence of a jury finding as to quantities, any sentence imposed under § 841 and § 960, through the corresponding conspiracy statutes, § 846 and § 963, that exceeds 20 years runs afoul of the *Apprendi* holding.

Because the defendants did not raise the *Apprendi* objection below, we review their claims for plain error. *See United States v. Kinter*, 235 F.3d 192, 199 (4th Cir. 2000). Under this standard of review, the defendants must establish an error that was plain and that affected their substantial rights. *See Johnson v. United States*, 520 U.S. 461, 468 (1997); *United States v. Olano*, 507 U.S. 725, 732 (1993). But even if these requirements are met, we may not exercise our discretion to notice and correct the plain error unless it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732.

First, as to Gumbs, because none of his concurrent sentences exceeds 240 months, he cannot assert an *Apprendi* error. *See Kinter*, 235 F.3d at 201-02 (holding that judicial factfinding relating to the imposition of a sentence within the statutory range specified by Congress does not violate the *Apprendi* rule); *United States v. Angle*, Nos. 96-4662, 96-4672, 99-4187, 2001 WL 732124, at *2 (4th Cir.) (en banc) (holding that 240 months is generally the "maximum penalty authorized by the facts found by the jury" in cases where the jury did not find specific drug quantities). Similarly, Santos' sentences do not raise an *Apprendi* error. Santos received four concurrent 360-month sentences, each of which is within the maximum sentence set forth in 21 U.S.C. § 841(b)(1)(C) for a defendant who has a prior felony drug offense, as long as notice of the prior conviction is given to the defendant pursuant to 21 U.S.C. § 851. In this case, the government provided such notice, and accordingly, the maximum term of imprisonment for Santos under § 841(b)(1)(C) was 360 months — the sentence that he received on each count. *See United States v. Arias*, 252 F.3d 973, 978 (8th Cir. 2001).

Roberts and Covington, on the other hand, each received multiple life and 30-year sentences, which exceed the base 20-year statutory maximums under 21 U.S.C. § 841 and 21 U.S.C. § 960 for convictions in which the jury did not find specific drug quantities justifying a greater sentence and in which other aggravating factors are not applicable. Accordingly, these sentences were plain error. *See United States v. Promise*, No. 99-4737, 2001 WL 732389, at *7 (4th Cir.) (en banc). We conclude nonetheless that these defendants have not met the final two prongs of the plain error analysis. They have shown neither that the error affected their substantial rights, nor that it "seri-

ously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732. We reach this conclusion for the following reasons.

First, we held in *United States v. White*, 238 F.3d 537 (4th Cir. 2001), that even if a defendant receives concurrent sentences of more than 20 years of imprisonment for multiple convictions under 21 U.S.C. § 841 without a jury determination of drug quantity, the asserted error does not affect the defendant's substantial rights if the defendant's term of imprisonment is no longer than the aggregate sentence to which the defendant would "otherwise be subject" under the Sentencing Guidelines. *Id.* at 542; *see also Angle*, 2001 WL 732124, at *3. The Guidelines provide that in the case of multiple convictions, "if the total punishment mandated by the guidelines exceeds the highest statutory maximum, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment." *White*, 238 F.3d at 543 (citing U.S.S.G. § 5G1.2(d)). In other words, the district court must "stack" multiple sentences consecutively — and thus not impose sentences concurrently — when the punishment required by the Sentencing Guidelines exceeds the highest "prescribed statutory maximum" for an indictment offense of conviction. And because the district court is required to engage in this stacking procedure, a sentence above the "prescribed statutory maximum" for a single offense does not affect the defendants' substantial rights as long as the aggregate of the statutory maximum sentences for the offenses of conviction, when imposed consecutively, exceeds the punishment actually imposed upon the defendant asserting reversible error under the rule of *Apprendi*.

Both Roberts and Covington received concurrent life sentences — Roberts received 10, and Covington 11. To be sure, the principle established in *White* may not always apply to a defendant with one or more life sentences, given that a calculation of the duration of those sentences in years may become a matter of speculation. Were we, for example, to address circumstances in which a defendant had received three concurrent life sentences under a statute with a 20-year statutory maximum, we would be much more hesitant to apply this rationale, as it is possible that a defendant could live for 60 more years. This case, however, does not present those circumstances. Roberts was found guilty on 12 separate drug trafficking counts and Cov-

ington 19. Even with the base 20-year maximum term of imprisonment for a single conviction under the statutes at issue (without considering other aggravating factors), the Sentencing Guidelines stacking rules would have required the district court to impose consecutive sentences upon these defendants that grossly exceeded, in the aggregate, the span of the concurrent life sentences that were actually imposed. In light of that reality, Roberts and Covington have not met their burden of showing that the asserted error affected their substantial rights.

Moreover, even were Roberts and Covington able to show an effect on their substantial rights, they certainly have not shown that the imposition of concurrent life and 30-year sentences, rather than consecutive sentences totaling at least 240 years for Roberts and 380 for Covington, would "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732.

Even if the rule in *White* did not apply, we would conclude with respect to Roberts that he failed to meet his burden under *Olano* for a second reason. We have previously noted that a district court's failure to submit the question of drug quantity to the jury does not affect substantial rights when the quantities at issue are "uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *United States v. Strickland*, 245 F.3d 368, 380 (4th Cir. 2001) (quoting *Neder v. United States*, 527 U.S. 1, 17 (1999) (internal quotation marks omitted)). Because Roberts was convicted on multiple counts and given 10 concurrent life sentences, his burden under the plain error standard is even heavier than it would be if he had been convicted of only one count. Because any one conviction could justify a life sentence, he must demonstrate that reversible error occurred with regard to each life sentence that he received. Otherwise, he would fail to establish that his substantial rights were affected. *See White*, 238 F.3d at 542-43. Roberts has not carried this burden. The government presented uncontested evidence to the jury that, where relevant, the drug quantities at issue were as alleged in the indictment. Based on that same evidence, the jury convicted Roberts on every count. And Roberts has made no showing that he effectively contested, at trial or sentencing, the drug quantities to which the government's witnesses testified — at least not to the extent that he would not have been exposed to a

maximum of less than life on *every* count. For example, Roberts never contested the attribution of 127.58 grams of crack to him based upon an October 1996 incident — a quantity that, by itself, would have exposed him to a maximum of life imprisonment for his conspiracy conviction. *See* 21 U.S.C. § 841(b)(1)(C).

In sum, Roberts has not shown either here or below that the drug quantities attributed to him by the government's witnesses with regard to every relevant count were significantly inaccurate, and the record contains no evidence that could "rationally lead to a contrary finding with respect to the omitted element" on each of those counts. *Neder*, 527 U.S. at 19. Thus, Roberts has not shown that the district court's failure to instruct the jury on the quantity issue prejudiced him, and therefore the purported error cannot be said to have affected his substantial rights under *Olano*.

Covington, on the other hand, *did* challenge all of the quantities at sentencing, the stage of the proceedings during which he would have, under then-existing law, challenged quantities. *See United States v. Powell*, 886 F.2d 81, 85 (4th Cir. 1989) (holding that drug quantity is a sentencing factor). It is doubtful, however, that his conclusory argument at sentencing about the evidence of quantities — the solitary statement that "it is a question of credibility of the witnesses, and we would submit that they were not credible" — could be sufficient, in the absence of other argument or evidence, to establish prejudice under *Neder*. *Cf. Johnson*, 520 U.S. at 470 & n.2 (holding that the defendant had not met his burden under the fourth prong of *Olano* when the only argument contesting the omitted element was the statement of the trial counsel that "I would argue that the element of materiality has been insufficiently proven and that the Court ought to grant a judgment of acquittal"). But we need not resolve this issue because, as we noted above, Covington's conviction for 19 drug trafficking counts, each of which has a maximum sentence of at least 20 years, precludes our finding that his substantial rights were affected under *White*.

### III

Appellants' additional arguments do not require significant discussion. We will, however, address two that were pressed at oral argument.

First, Roberts contends that the district court abused its discretion in denying his motion for a new trial following the alleged recantation of a government witness. After trial, Ronald Eudailey, who had offered important testimony against several of the defendants, told a private investigator that because of serious memory problems and prior drug use, he could not remember some of the events to which he had testified and that the government's attorneys had "coached" many of his answers.

When a government witness recants his testimony after trial, the court may grant a motion for a new trial when it is "reasonably well satisfied" (1) that "the testimony given by a material witness is false," (2) "[t]hat without it the jury *might* have reached a different conclusion," and (3) "[t]hat the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." *United States v. Wallace*, 528 F.2d 863, 866 (4th Cir. 1976) (quoting *Larrison v. United States*, 24 F.2d 82, 87-88 (7th Cir. 1928) (emphasis in original)). We review the denial of such motions for abuse of discretion. *See Chesapeake Paper Prods Co. v. Stone & Webster Eng'ring Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995).

We do not believe that the district court abused its discretion when it denied Roberts' motion for a new trial. After observing Eudailey's demeanor at trial and reviewing the transcript of his "recantation," the district court indicated that it was not "reasonably well satisfied" that the original testimony was false. Indeed, the district court believed that Eudailey was "playing games with the court." The so-called recantation was cryptic and contradictory. While Eudailey implied at points in his testimony that he had not told the truth on the stand, he expressly stated only that he had been coached, that he could remember nothing, and that he was not certain that his testimony had been truthful. He even said that he could no longer remember the substance of his testimony at trial — a proposition that makes it extremely unlikely that he could assess the truth or falsity of that testimony. He certainly did not identify any facts to which he had testified falsely. To the contrary, much of Eudailey's testimony at trial had been corroborated by other government witnesses, and Eudailey himself had been rather candid on the stand at trial about his memory problems and the degree to which the government's attorneys had jogged his

memory with respect to details such as dates. In the totality of these circumstances, we do not believe that the district court abused its discretion in denying Roberts' motion for a new trial.

Second, Santos contends that the evidence at trial was insufficient to support the jury's finding that he was a member of a single conspiracy involving Roberts, Gumbs, and Covington. He argues that the evidence shows at most that he was merely a street dealer, engaged in a single, "retail" conspiracy with Covington. He maintains that because no evidence links him to the "wholesale" conspiracy conducted by Covington and the other two defendants, his conspiracy conviction must be reversed. Again, we disagree.

The government presented evidence that would satisfy its burden of proving a single conspiracy involving "one overall agreement" or "one general business venture." *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988) (internal quotation marks and citations omitted). The evidence that Santos and Covington were engaged in a conspiracy was overwhelming, as was the evidence that Covington conspired with Gumbs and Roberts. A reasonable jury could very well have concluded from the evidence that Santos was linked to Gumbs and Roberts and thus that the government had proved that one conspiracy involving wholesale and retail distribution existed among all of the defendants.

Even if the evidence were ambiguous, we would reverse Santos' guilty verdict only if the proof of multiple conspiracies was likely to have confused the jury into imputing guilt to him as a member of one conspiracy because of the illegal activity of members of the other conspiracy. *See United States v. Barsanti*, 943 F.2d 428, 439 (4th Cir. 1991). We have held that when the government proves two conspiracies at different tiers — one retail and one wholesale — "proof of those two separate conspiracies would not have prejudiced appellants . . . since the jury would not have been confused into imputing guilt to members of one conspiracy because of the illegal activities of the other conspiracy." *United States v. Hines*, 717 F.2d 1481, 1490 (4th Cir. 1983). "With only two conspiracies, each at a distinct level, and simple in operation, the jury was not likely to confuse evidence concerning one level as being relevant concerning the other." *Id*.

With respect to the remaining assignments of error — the district court's denial of the motion for discovery on whether the government selectively prosecuted African-Americans; the court's refusal to grant the defendants' severance motions; the court's disparaging commentary about counsel and its taking over some of the questioning; the court's denial of the motion to recuse; the insufficiency of the evidence; the court's sentencing determinations regarding drug quantity; and the court's findings during sentencing about the defendants' roles in the conspiracy — we have considered the appellants' arguments and have carefully reviewed the record. Based on this review, we find the arguments without merit.

Accordingly, we affirm the judgments of the district court.

*AFFIRMED*